# SCHOOL BOARD OF DADE COUNTY v TORELLI

## Case No. 86-2017

State of Florida, Division of Administrative Hearings

October 9, 1986

## APPEARANCES OF COUNSEL

**Phyllis O. Douglas,** School Board of Dade County, for petitioner.
**Edmond G. Torelli,** pro se.

## OPINION OF THE COURT

ARNOLD H. POLLOCK, Hearing Officer.

### *RECOMMENDED ORDER*

Consistent with the Order of the undersigned confirming an *ore tenus* grant of continuance dated August 20, 1986, a copy of which

was furnished to both parties herein, a hearing was held in this case before Arnold H. Pollock, a Hearing Officer with the Division of Administrative Hearings in Miami, Florida, on August 25, 1986. The issue for consideration was whether the Respondent should be dismissed from employment with the Dade County School Board because of the alleged misconduct outlined in the Notice of Charges filed herein.

## BACKGROUND INFORMATION

On June 6, 1986, Phyllis O. Douglas, Attorney for the School Board of Dade County, signed a Notice of Charges in this case against the Respondent, Edmond G. Torelli, filed with the Division of Administrative Hearings on June 9, 1986. In the Notice of Charges, Petitioner alleges that Respondent provided false evaluations as to his prior performance in support of his application for placement on a promotion roster in December, 1985, and that in October 1986, Respondent was found guilty in federal district court of forging an endorsement and uttering a U.S. Treasury check.

Respondent demanded a hearing on the proposed dismissal from employment with the school board and the case was referred to the Division of Administrative Hearings for the appointment of a hearing officer. The case was originally scheduled for hearing on August 8, 1986, by notice dated June 30, 1986, but based on a request for continuance by the Respondent, the hearing was postponed until August 25.

At the hearing Respondent again moved for a continuance on the basis that he had provided certain information to the U. S. Attorney which he indicated would result in a vacation of his conviction in U.S. District Court. Respondent presented no evidence in support of this and since all parties and witnesses were present at the hearing, the hearing officer agreed that in the event Respondent should receive an order of vacation prior to the time of entry of the Recommended Order in this case he could file it with the Division of Administrative Hearings as a late filed exhibit, and it would be considered as evidence in the case. With that ruling, the Motion for Continuance was denied.

At the hearing, Petitioner presented the testimony of Maria Andrew Jerkins, Principal of Allapattah Junior High School in Dade County, Florida; Darrell Phillip Berteaux, Principal at Westview High School in Dade County; Elizabeth Ann Faraci and Beatric Medina Rosario, both employees of the Social Security Administration in Hollywood, Florida; Lonnie Charles Coleman, Director of Management Selection for the Dade County School System; and Dr. Desmond Patrick Gray,

Jr., Assistant Superintendent, Dade County Public Schools. Petitioner also introduced Petitioner's Exhibits 1 through 6. Respondent testified in his own behalf and introduced Respondent's Exhibits A and B.

Subsequent to the hearing, Petitioner submitted proposed findings of fact which have been thoroughly considered and evaluated in the preparation of this Recommended Order. A specific ruling as to each proposed finding of fact is contained in the Appendix hereto.

## FINDINGS OF FACT

1. At all times pertinent to the allegations in the Notice of Charges, the Respondent was employed as an Assistant Principal in Dade County School System and held a continuing contract as a teacher.

2. In December 1985, while employed as Assistant Principal at Westview Middle School, he applied for placement on the roster of eligible candidates for appointment to positions as Principal or Assistant Principal in the Dade County School system. The Respondent's application was forwarded through appropriate channels to the Office of Management Selection where it was reviewed by Mr. Coleman, the Director. Mr. Coleman determined that the Respondent's application did not include the three performance evaluations rendered on him immediately prior to the submission of the application and, since in December 1984, the school board rule regarding this subject was changed to require "exceeds performance standards" evaluations on three prior ratings for an individual to be considered for principal/assistant principal positions, Mr. Coleman called the Respondent on the phone and spoke to him about this.

3. At this point in time, Mr. Coleman already knew about an investigation that had been conducted regarding the Respondent shortly before the submission of his application involving an allegation that the Respondent had used excessive force in the disciplining of a student and he, Mr. Coleman, was satisfied that Respondent's application was not likely to be approved. As a result, he attempted to dissuade the Respondent from submitting the application but was unable to do so.

4. When the application was received, it had only one evaluation form attached and, as a result, Ms. Mendez, Mr. Coleman's employee, contacted the Respondent again by telephone and requested that he submit the other two evaluations. It is at this point that Respondent claims he went to his personal file, extracted the two pertinent evaluation forms considering date only, and submitted them to the school board without looking to see what the rating was that appeared thereon.

242

5. When received by the school board, the three ratings in question for the period August 1982 through June 1983, August 1982 through June 1984, and August 1984 through June 1985, all reflected that the overall assessment of the Respondent was that his performance was either above or exceeded performance expectations or standards.

6. The three applications in question were prepared by Ms. Jerkins (August 1982 through June 1983) and Mr. Berteaux (August 1983 through June 1984 and August 1984 through June 1985).

7. Ms. Jerkins categorically denies ever having rendered an annual performance evaluation on the Respondent with an exceeds performance standard rating notwithstanding what appears on the rating form bearing her signature contained in Petitioner's Composite Exhibit 4, dated June 20, 1983. This form reflects an "exceeds expected performance" standard. She rated him for the period as "meets expected performance standards." She did, on March 2, 1983, rate the Respondent "outstanding" in each listed category on a reference evaluation form relating to the Respondent's application for a position of Supervisor II in Computer Education. She feels that a rating of outstanding is appropriate for this purpose but she did not then and would not now rate him as exceeding the performance standards of an Assistant Principal. It is this Assistant Principal position to which the performance evaluation form submitted by the Respondent with his application for placement on the principal's roster relates. Respondent's contention that the reference evaluation of outstanding equates to an exceeds performance rating is not supported by the facts.

8. With respect to the 1983/84 rating, Mr. Berteaux evaluated Respondent at the end of the school year and admittedly first evaluated him as having exceeded performance standards. A copy of this performance report was forwarded to the Respondent and reflected the "exceeded standards" rating. However, before being finalized through channels, the rating was changed by Mr. Berteaux as a result of his receipt of a report of investigation into an allegation that Respondent used excessive force against a student. When the report of investigation was given to Mr. Berteaux, apparently indicating that the allegation of excessive force was well-founded, he advised the Respondent by telephone that the evaluation which previously indicated that Respondent "exceeds" performance standards would be lowered to a rating that the Respondent "meets" performance standards. This was done, and constitutes the official and final evaluation of the Respondent for that period of time. Mr. Berteaux cannot say with any certainty whether a copy of the amended evaluation form was furnished to the Respondent.

243

However, he is certain that he personally spoke with the Respondent about it by telephone because Respondent had already gone on summer vacation when the evaluation was completed and advised him of the lowering of the performance evaluation.

9. It is most likely that a copy of the lowered evaluation was not given to the Respondent. In fact, that form which appears in the school board's records bears a signature of the Respondent which does not appear to be his bona fide signature.

10. There was no evidence presented by the Petitioner to establish that the 1984/85 evaluation which bears a rating of above performance expectations was inaccurate and there is no allegation in the notice of charges that any impropriety exists with regard to that evaluation form.

11. On February 24, 1986, Respondent appeared with counsel before Judge Norman C. Rotteger, Jr., in the United States District Court for the Southern District of Florida, and entered a plea of guilty to the charge of forging a U.S. Treasury check in violation of Title XVIII, U.S. Code, Section 495. A finding of guilty was entered but imposition of a sentence on confinement was withheld. Respondent was placed on probation for a period of three years.

12. Mr. Torelli does not deny having placed his mother's name on the Social Security check made payable to her even though she had been deceased for a period in excess of one year at the time he did so. He contends, however, that a representative of the Social Security Administration office in Hollywood, Florida, to whom he spoke in regard to the disposition of the check, advised him that this was the appropriate thing to do.

13. Respondent failed to present any evidence other than his own testimony to that effect, however. He presented the testimony of the two Social Security Administration employees with whom he allegedly spoke both of whom denied having told him to sign or cash his mother's Social Security check and both of whom contended that it is not Social Security policy to do so. Neither has ever advised a client to sign or cash a Social Security check that was not made out to them.

14. Absent any evidence to the contrary other than the testimony of the Respondent, therefore, it is found that the Respondent did forge his mother's name to the check and cash it; that such action was without proper authority and was unlawful; and that he did so of his own volition.

15. Respondent indicates that he has presented evidence to the U. S.

Attorney which will result in the finding of guilty being vacated. Such evidence was not presented at this hearing and for the purposes of this hearing, it is found that the conviction was proper and properly entered.

16. Both Mr. Coleman and Dr. Gray indicated that the actions of the Respondent as outlined above including the misrepresentation of his qualifications in regard to his application for placement on the principal's roster and his conviction in federal district court would have a substantial impact on Respondent's fitness to serve within the school system. Because it is imperative that the principal be able to have and place trust in his employees, Dr. Gray concluded that the Respondent's action in both regards pose a substantial question as to his integrity and have a serious bearing on his capabilities to function as an educator. They have affected his ability to serve as a role model and as an example to his students.

## CONCLUSIONS OF LAW

The Division of Administrative Hearings has jurisdiction over the parties and the subject matter of these proceedings. In its Notice of Charges, the Petitioner, School Board of Dade County, contends that the submission of the false appraisal forms and the conviction entered in federal district court constitutes misconduct in office and conviction of a crime involving moral turpitude respectively as defined in Section 231.36, *Florida Statutes* (1985), as grounds for dismissal. Petitioner further urges that the Respondent's misconduct constitutes violations of the Code of Ethics of the Education Profession in Florida (Rule 6B-1.01, *Florida Administrative Code*), the Principles of Professional Conduct for the Education Profession in Florida (Rule 6B-1.06, *Florida Administrative Code*), and meets the criteria for suspension and dismissal as outlined in Rule 6B-4.09, *Florida Administrative Code*, subsections 2 and 3. Subsection 2 relates to immorality, which is defined as "conduct that is inconsistent with the standards of the public conscience and good morals" and misconduct is defined as "a violation of the Code of Ethics of the education profession and the principles of professional conduct for the education profession which is so serious as to impair the individual's effectiveness in the school system."

The Code of Ethics of the education profession in Florida at subparagraph 3 requires the educator to be aware of the importance of maintaining the respect and confidence of one's colleagues, its students, of parents and of other members of the community and to strive to achieve and sustain the highest degree of ethical conduct. Subpara-

graph 5(a) of Rule 6B-1.06 requires the educator to maintain honesty in all professional dealings; at subparagraph (f), not misrepresent his own professional qualifications; and at (h), not make any fraudulent statement or fail to disclose a material fact in his own application for a professional position.

Respondent contends that when called by Ms. Mendez to submit the two earlier evaluation reports in support of his application to be on the principal's roster, he went to his personal file and pulled out the two forms in question looking only at the date thereon and failing to notice the evaluation rating which they contained. They may have been reasonable in the cases of Mr. Berteaux's evaluation even though Respondent was advised that his evaluation had been reduced in standing and he had an obligation to ensure that the proper and accurate form was submitted. However, with regard to the evaluation by Ms. Jerkins, there can be no question that the form submitted was in error and had been falsified. Ms. Jerkins was unequivocal in her statement that at no time had she ever given the respondent an exceeds standards rating at the end of a school year and the only rating that she gave him which exceeded the meets standards criteria was that in relation to his application for the computer position which is not an issue here. On the basis of that, it is clear that Respondent misrepresented his qualifications and failed to ensure that the documents submitted in support of his application for placement on the principal's roster were correct. This is a violation of both Rule 6B-1.01 and 6B-1.06 and constitutes misconduct in office which is grounds for discipline under Rule 6B-4.09, *Florida Administrative Code.* Clearly, his misconduct is, in the eyes of both Mr. Coleman and Dr. Gray, and in the opinion of the undesigned, so serious as to impair his effectiveness in the school system.

With regard to the conviction as was stated before, there is no evidence, save the Respondent's unsupported allegation, of advice by Social Security employees, to support his position that he is not responsible for his actions. Even had he been advised to sign his mother's name, he was aware that at this point his mother had been deceased for at least a year and was not entitled to the money. An individual's reliance on advice to break the law does not exonerate that person from the consequences of his act. The state of the evidence is that the Respondent currently stands convicted of the crime of forgery which is a crime involving moral turpitude. As such, it constitutes a violation of subparagraph (6) of Rule 6B-4.09, *Florida Administrative Code,* and constitutes grounds for discipline.

Having concluded that grounds for discipline exist by virtue of

246

Respondent's guilt of the allegations contained in the Notice of Charges, the question remains as to what action would be appropriate in the circumstances. The evidence shows an individual who apparently has little regard for the system in which he operates. He does not take seriously the requirement to submit accurate documentation in support of an application, nor does he honor the laws of the United States regarding Social Security checks. Both Mr. Coleman and Dr. Gray have concluded that in their opinion as professional educators the Respondent's effectiveness within the Dade County School System as an educator has been sorely compromised and diminished. There is no evidence of record to in any way contradict these opinions.

## RECOMMENDATION

In light of the foregoing Findings of Fact and Conclusions of Law, it is therefore recommended that the Respondent, Edmond G. Torelli, be dismissed from employment with the School Board of Dade County effective as of the date of the final order of dismissal.

RECOMMENDED in Tallahassee, this 9th day of October, 1986.